UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN RAYMOND AST,<br><br>    Petitioner,<br><br>v.<br><br>PATRICK COVELLO,<br><br>    Respondent. | Case No. 2:21-cv-01195-DJC-JDP (HC)<br><br>**FINDINGS AND RECOMMENDATIONS**<br><br>THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE DENIED<br><br>ECF No. 1<br><br>OBJECTIONS DUE IN FOURTEEN DAYS |

    Petitioner Morgan Raymond Ast seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. He alleges that: (1) his sentencing enhancement for great bodily injury ("GBI") is unconstitutional because the definition of GBI given to the jury was ambiguous and eased the prosecution's burden of proof; and (2) his sentences for making criminal threats should have been stayed under the California Penal Code, because they were based on the same conduct as his conviction for corporal injury to a spouse.[1] ECF No. 1 at 6. Respondent has filed an answer, ECF No. 37, arguing that both claims should be denied. After reviewing the pleadings, including petitioner's late-filed brief, ECF No. 41, I agree with respondent and recommend that the petition be denied.

---

[1] The third claim, that petitioner's trial counsel was ineffective, was previously dismissed for failure to exhaust. ECF Nos. 23 & 32.

1

**Background**

I have reviewed the background summary provided by the state appellate court on direct appeal. It is correct, and I reproduce it here:

> In July 2018, defendant and his wife lived together. On July 7, 2018, at 10:30 p.m., Officer Tracy Trapani with the South Lake Tahoe Police Department responded to a domestic violence call at their apartment. Wife answered the door. At least four areas on her face were swollen, with significant bruising under her right eye socket, and lumps on the right side of her temple and forehead. She smelled strongly of alcohol, her speech was slurred, making it difficult to understand her, she was stumbling around, and had bloodshot, watery eyes. Wife was able to say defendant had assaulted her but could not give any specific information. Her inability to provide details was related in part to her level of intoxication. Officer Trapani took pictures of wife's injuries. Wife declined medical attention.
>
> At approximately 6:30 a.m. the next morning, South Lake Tahoe police officers Derek Simon and Matt Morrison responded to another domestic violence call at the apartment. Wife answered the door and told the officers they needed to take defendant away. The officers separated defendant and wife to take their statements. The officers noted wife and defendant each had injuries.
>
> Wife had "significant severe facial injuries." The right side of her face was swollen and she had dark black bruises. She did not appear under the influence of alcohol when Officer Morrison was speaking with her. She did not remember Officer Trapani having been there the night before. Wife told Officer Morrison that defendant had kicked her in the head. She also reported that she had been choked to near unconsciousness and that while she was being attacked, defendant had threatened that "if he was going to be going to prison, that he would have a reason to, and he also said that he was going to kill her." Wife did not provide additional details as to when defendant made these threats. Officer Morrison determined wife needed medical attention and had her taken to the hospital by ambulance. Her right eye was bruised and swollen, she had an injury to her temple, bruising by her left ear, and additional bruising around the top of her forehead near the hairline. She had bruises on the underside of her forearms that were consistent with defensive injuries. She had bruising and irritated skin on her neck consistent with being choked. Officer Morrison took additional photographs of her injuries at the hospital.
>
> Defendant had a scratch on his face, and bruising around his mouth and right eye. He initially denied knowing how he sustained the injuries. After he was placed under arrest, he claimed wife had caused the injuries during a physical altercation. Officer Simon photographed defendant's injuries.

> As part of his investigation, Officer Morrison reviewed a restraining order that was in effect on July 8, 2019, forbidding defendant from having nonpeaceful contact with wife.
>
> At trial, wife testified that when she came home on July 7, defendant appeared intoxicated and they got into an argument. Eventually, the fight escalated from yelling to defendant punching wife in the face. She left and went to a billiard hall. When wife returned to the apartment with a male friend, she and husband began arguing again. The argument intensified, and defendant held wife down and punched her in the face repeatedly. She did not remember if he choked her. She initially testified she did not remember him threatening her. She later testified that while holding her down and punching her, defendant said, "If I'm going to prison, I'm going to have a good reason to go." When he was beating her, she thought she was going to die. When he was done, defendant apologized.
>
> Defendant left, and when he returned in the morning, the argument reignited. It alternated between periods of defendant crying and hugging wife, telling her he loved her, and fits of anger and physical assault. He punched her and kicked her in her ear. She left and went to a friend's apartment to call the police.
>
> Wife was taken to the hospital in an ambulance. She was told she had fractures throughout her face, including her occipital bone, and required a complete nasal sinus repair. She testified she had a sinus leak that was creating a chronic infection and her front tooth has a chip.
>
> Wife remembered officers taking pictures of her injuries, and then going to the hospital in the ambulance. She recalled the officers taking pictures in her kitchen, and in the hospital, but did not recall if that was during one visit or separate contacts. Wife repeatedly testified she was unclear about specifics of the events, only remembered "bits and pieces . . . of what happened," could not put the time and the events together, and struggled with memory loss. She acknowledged that at the preliminary hearing she had testified all her injuries were caused during the fight on the bed, but had difficulty separating events into discrete categories because her memory was "in pieces" and she "remembered different things" but did not "remember exactly when they happened."
>
> Wife testified that in jailhouse phone conversations after his arrest, defendant tried to coerce her into lying and placing the blame for her injuries onto someone else. She said she felt very threatened by "strange phone calls" she had been getting. She did not recognize the voices of those making the calls. She testified defendant was violating the restraining order by even calling her.

ECF No. 16-2 at 2-4.

**Discussion**

**I.     Legal Standards**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because, here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on the merits of this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d 970, 975-76 (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last reasoned decision of a state court); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because the California Supreme Court denied review of Gill's habeas petition without comment, we look through the unexplained California Supreme Court decision to the last reasoned decision . . . as the basis for the state court's judgment.") (internal quotations omitted).

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

4

II. **Analysis**

    **A. Constitutionality of the Great Bodily Injury Sentencing Enhancement**

As noted above, petitioner argues that his sentencing enhancement for GBI is unconstitutional because the definition of GBI given to the jury was ambiguous. He claims that ambiguity impermissibly eased the prosecution's burden of proof. The state appellate court rejected that claim in a reasoned decision:

> Defendant contends the trial court erred prejudicially by improperly instructing the jury on the great bodily injury enhancement. Specifically, he contends CALCRIM No. 3163, describing the great bodily injury enhancement, is ambiguous and lessened the prosecution's burden of proof. Defendant also argues that if the issue is forfeited by failure to object, he received ineffective assistance of counsel.
>
> A. Additional factual background
>
> CALCRIM No. 3163, as given in this case, provides in pertinent part: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." During the jury instruction hearing, defense counsel indicated giving this instruction was "fine."
>
> During closing argument, the prosecutor indicated she did not "imagine" the issue of great bodily injury would be in dispute, as defense counsel had indicated as much in her opening statement. The prosecutor argued wife had suffered several fractures to her face; the jury saw photographs of the injuries and heard wife's testimony, and "[t]here's no dispute in this case that [there] was great bodily injury."
>
> In response, in her closing argument, defense counsel said the prosecutor "got it partially right, I said [wife] had bruises. I didn't say she had great bodily injury. [Wife] did have bruises, but part of this case is you deciding how she got those bruises and when she got those bruises and what were the circumstances. [¶] . . . And when we turn to the great bodily injury enhancement, that has to be injuries that are more than moderate. And in this case they have to be injuries that were inflicted during domestic violence. But the problem that we have in this case is she has bruising, but what defines more than moderate? Are my shins moderate? Are they more than moderate? You have bruising on her face, you don't have anything else. You have her words, but you don't have any other evidence that confirmed her words."
>
> Both parties' arguments focused primarily on wife's credibility and defendant's claims that wife's injuries were caused either by a drunken fall or a third party, and that he acted in self-defense against wife's aggression.

5

B. Legal standard

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' [Citation.]" (*People v. Mitchell* (2019) 7 Cal. 5th 561, 579.)

'Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citations.]' [Citations.] In other words, it is significant or substantial physical injury that is more than minor or moderate." (*People v. Sandoval* (2020) 50 Cal. App. 5th 357, 361 (*Sandoval*).) "'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.'" (*People v. Escobar* (1992) 3 Cal. 4th 740, 752.) The injuries do not have to be "'permanent'" or "'prolonged,'" nor must they include "'protracted'" "disfigurement, impairment, or loss of bodily function." (*Id.* at p. 750.) Rather, transitory injuries, contusions, swelling, abrasions, lacerations, black eyes and bruising can each constitute great bodily injury. (*Id.* at pp. 749, 752.)

C. Forfeiture

Generally, a defendant who believes that an instruction is erroneous or requires clarification must request correction or clarification of the instruction to avoid forfeiting the issue on appeal. (*People v. Carrington* (2009) 47 Cal. 4th 145, 189.) However, even without a request or objection, a defendant may argue the court erred in instructing the jury "if the substantial rights of the defendant were affected thereby." (§ 1259; *People v. Johnson* (2015) 60 Cal.4th 966, 993.) Defendant contends the instruction as given allowed the jury to make a true finding under circumstances that did not meet the elements of the statute. If he were correct (as we explain, he is not), the error would have affected his substantial rights. Accordingly, the claim is not forfeited. (*Johnson*, *supra*, at p. 993.) In any event, to resolve defendant's claim that defense counsel rendered ineffective assistance by failing to object or request modification of the instruction, we must address the merits of the issue.

D. Claim of instructional error

Defendant argues that the disjunctive phrasing used in CALCRIM No. 3163 that great bodily injury is an injury "'greater than minor or moderate harm,'" allowed the jury to convict where the harm is only more than minor but not greater than moderate. Relying on *People v. Medellin* (2020) 45 Cal. App. 5th 519 (*Medellin*), defendant asserts that CALCRIM No. 3163, and the prosecutor's

6

argument that the great bodily injury enhancement was not contested, permitted the jury to find the enhancement true under an invalid legal theory as to what constitutes great bodily injury, i.e., greater than minor harm (invalid) or greater than both minor and moderate harm (valid).

In *Medellin*, *supra*, 45 Cal. App. 5th 519, the trial court instructed the jury with CALCRIM Nos. 875 and 3160 which, like CALCRIM No. 3163, defined great bodily injury as "'significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.'" (*Medellin*, at p. 531.) In addition, the prosecutor misstated the law by arguing that he was required to prove only that "'[a]n injury is greater than minor.'" (*Id.* at pp. 531, 533.)

A panel of the Fifth District Court of Appeal concluded there was a reasonable likelihood that the jury understood or applied the prosecutor's argument in an improper or erroneous manner: "The arguments left the jury with two separate definitions for great bodily injury—greater than minor harm, or, greater than both minor and moderate harms. After these competing arguments, the court's actual instructions informed the jury great bodily injury means 'greater than minor or moderate harm.'" (*Medellin*, *supra*, 45 Cal. App. 5th at p. 533.) The majority concluded the prosecutor's misstatement of the law, standing alone, was insufficient to reverse defendant's convictions, but when combined with the ambiguity in the instruction, it required reversal. (*Id*. at pp. 533, 535-536.)

The *Medellin* court explained that "'[u]nder the plain language of the instruction, the jury could have convicted' [defendant] if they believed either greater than minor harm or greater than moderate harm was sufficient. [Citation.] 'The instruction's "use of the word 'or' . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories."' [Citation.]" (*Medellin*, *supra*, 45 Cal. App. 5th at p. 534.) The dissenting justice agreed that the prosecutor had misstated the law but found that the instruction at issue correctly stated the law without ambiguity. (*Id.* at p. 538 (conc. & dis. opn. of Detjen, J.).)

Since *Medellin*, two different panels of the Fifth District Court of Appeal have revisited this issue, in *Sandoval*, *supra*, 50 Cal. App. 5th 357, and *People v. Quinonez* (2020) 46 Cal. App. 5th 457 (*Quinonez*), concluding that the instructional language is not ambiguous or reasonably likely to result in the jury misapplying the law.

In *Quinonez*, the court concluded the instructions were not ambiguous when considered as a whole. "These instructions did not allow the jury to find defendant guilty and the enhancements true upon the determination that [the victim's injury] only constituted 'moderate' harm. Instead, the instructions expressly stated the jury had to find [the] injuries were 'significant or substantial,' consistent with the well-recognized definition of great bodily injury." (*Quinonez*, *supra*, 46 Cal. App. 5th at p. 466.) In addition, the court noted that counsel did not misstate the law and the defense did not argue the victim had not suffered great bodily

7

> injury, but rather that defendant's actions were accidental, and she acted in self-defense. (*Ibid*.) Accordingly, the court held "[t]he instructions given in this case correctly stated the legal definition of great bodily injury, the prosecutor's closing argument was consistent with those definitions, defendant's substantial rights were not violated, and counsel was not prejudicially ineffective for failing to object to the instructions." (*Id.* at p. 467.)
>
> In *Sandoval*, the majority explicitly disagreed with the reasoning of *Medellin* and concluded that the definition of great bodily injury in the instruction was not ambiguous. "'[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citations.] Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of 'or' in the phrase 'minor or moderate harm.' Rather, that phrase cannot be divorced from the one that immediately precedes it: 'injury that is *greater than*' (italics added). '[I]njury that is greater than minor or moderate harm' cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically, particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is 'significant or substantial.'" (*Sandoval*, *supra*, 50 Cal. App. 5th at p. 361.)
>
> We agree with the majority opinions in *Quinonez* and *Sandoval*. When considered as a whole and in context, the definition of great bodily injury in CALCRIM No. 3163 is not ambiguous. The instruction "clearly informed jurors that great bodily injury meant significant or substantial physical injury, i.e., injury that was greater than moderate harm." (*Sandoval*, *supra*, 50 Cal. App. 5th at p. 362.) Considering the instructions as a whole and the trial record, including the extent of wife's injuries and the arguments of counsel, there is no reasonable likelihood the jurors misapplied the instruction to find great bodily injury based on injury that was more than minor, but less than moderate. We therefore find no error.

ECF No. 16-2 at 6-12 (internal footnotes omitted). This claim was then raised before the California Supreme Court in a petition for review, and that court issued a summary denial. ECF No. 16-4.

This claim should be denied. As an initial matter, respondent argues that the state appellate court, despite discussing the claim only in a state law context, also rendered a reasoned decision on petitioner's federal due process claim. ECF No. 37 at 13. I agree. The Supreme Court has held that:

> [W]hen a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas

8

> proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits.

*Johnson v. Williams*, 568 U.S. 289, 293 (2013). That presumption can be rebutted by showing that, in implicitly rejecting the federal claims, the state court relied on a state law standard that is less protective than the federal standard. *Id.* at 301-02. Petitioner has not rebutted the presumption in this case. Thus, I find that the AEDPA standards apply to this claim.

The state appellate court's rejection of this claim was not unreasonable. To prevail on this claim of instructional error, petitioner must show that "the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009). Here, the state appellate court's finding that the instruction was not ambiguous was reasonable. As it explained, "[t]he instruction clearly informed jurors that great bodily injury meant significant or substantial physical injury, i.e., injury that was greater than moderate harm." ECF No. 16-2 at 12. This finding is supported by the record. ECF No. 35-4 at 150 (Instructions explaining that "[g]reat bodily injury means significant or substantial physical injury."). Moreover, this court reviews a state court's analysis of a state law jury instruction with a high degree of deference. *Byrd v. Lewis*, 566 F.3d 855, 861-62 (9th Cir. 2009) (holding that deference to a state court's decision "applies with even greater force when a state court is analyzing a jury instruction developed under state law"). Thus, petitioner's claim should be rejected. *See Waddington*, 555 U.S. at 192 ("[T]he conclusion reached by the Washington courts that the jury instruction was unambiguous was not objectively unreasonable, the Court of Appeals' 28 U.S.C. § 2254(d)(1) inquiry should have ended there.").

### B. Section 654 Claim

Petitioner claims that under California Penal Code § 654 his convictions for making criminal threats should have been stayed because they were based on the same conduct as his conviction for corporal injury to a spouse. The state appellate court rejected this claim in a reasoned opinion:

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 applies not only where there was one act in the ordinary sense, but also where there was a course of conduct that violated more than one statute, but nevertheless constituted an indivisible transaction. (*People v. Perez*, *supra*, 23 Cal. 3d at p. 551.) However, if the evidence discloses that a defendant entertained multiple criminal objectives, he may be punished for the independent violations committed in pursuit of each objective. (Ibid.) "'It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.' [Citations.]" (*People v. Hicks* (1993) 6 Cal. 4th 784, 789.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal. 3d 321, 335.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*Ibid.*; *see also People v. Jones* (2002) 103 Cal. App. 4th 1139, 1143.) "'"A defendant's criminal objective is 'determined from all of the circumstances . . . .'"' [Citation.]" (*People v. Sok* (2010) 181 Cal. App. 4th 88, 99.) And a trial court's findings, express or implied, are subject to the substantial evidence standard of review. (*People v. Atencio* (2012) 208 Cal. App. 4th 1239, 1242; *People v. Liu* (1996) 46 Cal. App. 4th 1119, 1135-1136.)

"'The defendant's intent and objective are factual questions for the trial court . . . .'" (*People v. Coleman* (1989) 48 Cal. 3d 112, 162.) Trial courts have broad latitude to determine whether a defendant harbored one or more objectives, and we uphold their findings on appeal if there is any substantial evidence in the record to support them. (*People v. Hutchins* (2001) 90 Cal. App. 4th 1308, 1312.) "'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citation.]' [Citation.]" (*People v. Andra* (2007) 156 Cal. App. 4th 638, 640-641.)

. . .

Threats made during the infliction of physical harm can be punished separately from crimes associated with the physical harm without violating section 654 when the threats are made with a separate criminal objective. (*People v. Mejia* (2017) 9 Cal. App. 5th 1036, 1046-1047.) "[M]entally or emotionally terrorizing the victim by means of threats is an objective separate from the intent to cause extreme physical pain. Accordingly, a reasonable trier of

fact could conclude that the criminal threats were in furtherance of a separate criminal objective . . . ." (*Id.* at p. 1047.)

Contrary to defendant's claim, the assault and criminal threats were not a single act. Rather, defendant engaged in a course of conduct from the evening of July 7 through the morning of July 8, during which he committed the separate acts of assaulting and threatening wife. During the intermittent, yet continuing assault, defendant punched, choked, and kicked wife and, while holding her down, told her that if he was going to prison, he was going to have a good reason to and threatened to kill her. From the evidence, it is reasonable to infer that defendant threatened wife to inflict emotional or psychological harm, separate from his purpose to harm her physically by beating her. Thus, the trial court's implied finding of separate objectives was supported by similar reasonable inferences.

Moreover, the objectives were separate and independent of each other, not merely incidental to each other. The threat was not the method used to commit a different crime against wife. (*Cf. People v. Louie* (2012) 203 Cal. App. 4th 388, 399 [single act of threatening the victim was the method employed to attain the objective of dissuading a witness; therefore, defendant could not be punished for both criminal threats and dissuading a witness based on a single act].) Nor did the threat facilitate the infliction of physical injury.

Lastly, one "purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal. 4th 331, 341.) Prohibiting multiple punishment under the circumstances presented here would not further that purpose. Defendant attacked wife emotionally and psychologically over many hours by threatening her life while he was attacking her physically. Thus, imposing and executing the consecutive sentence for making criminal threats is consistent with the purpose of section 654.

ECF No. 16-2 at 12-15. This claim was then raised before the California Supreme Court in a petition for review, and that court issued a summary denial. ECF No. 16-4.

This claim should be denied because it sounds purely in state law, and the state court's interpretation of that law is binding here. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus.").

1   Accordingly, it is RECOMMENDED that the petition, ECF No. 1, be DENIED.

2   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   July 26, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

12